**14 CV        8220**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINEWEIGHT, LLC, and CRYE
PRECISION, LLC,

        Plaintiffs,

v.

SAFARILAND, LLC

        Defendant.

Civil Action No.

(JURY TRIAL DEMANDED)



## COMPLAINT

Plaintiffs LineWeight, LLC and Crye Precision, LLC (collectively "Plaintiffs"), for their

Complaint against Defendant Safariland, LLC ("Defendant"), state and allege as follows:

### NATURE OF THE ACTION

1.     This is an action for patent infringement under the patent laws of the United

States, Title 35, U.S.C., based on Defendant's infringement of United States Patent No.

6,892,392 ("the '392 patent").

### THE PARTIES

2.     Plaintiff LineWeight, LLC ("LineWeight") is a New York limited liability

company with a principal place of business at Brooklyn Navy Yard, 63 Flushing Avenue, Unit

252, Brooklyn, New York 11205.

3.     Plaintiff Crye Precision, LLC ("Crye Precision") is a New York limited liability

company with a principal place of business at Brooklyn Navy Yard, 63 Flushing Avenue, Unit

252, Brooklyn, New York 11205.

4.     Upon information and belief, Defendant Safariland, LLC, is a Delaware limited liability company with its principal place of business at 13386 International Parkway, Jacksonville, Florida 32218.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     Upon information and belief, this Court has personal jurisdiction over Defendant in that Defendant has engaged in acts constituting doing business in the State of New York, including in this judicial district, and has intentionally directed its tortious activities toward the State of New York, including this judicial district.  Upon information and belief, Defendant has committed acts of patent infringement in New York, including this judicial district, and has delivered the infringing products into the stream of commerce with the expectation that they will be purchased by consumers in the State of New York, including this judicial district.  Upon information and belief, Defendant has sold products, including infringing products that are the subject of this Complaint, to consumers in the State of New York, including this judicial district. In addition, consumers in New York, including this judicial district, are able to purchase the infringing products from Defendant for shipment to New York, including this judicial district. Upon information and belief, consumers have also used the infringing products sold by Defendant in the State of New York.  In addition, upon information and belief, Defendant is subject to personal jurisdiction in this district by virtue of its general conduct of business in this district, its purposeful availment of the rights and benefits of New York law, and its substantial and continuing contacts with the state of New York.

7.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) – (d) and 1400(b) in that Defendant is a corporation subject to personal jurisdiction within this judicial district and has committed acts of patent infringement in this judicial district.

## THE PATENT IN SUIT

8.     The '392 patent is entitled "Personal Body Armor," and was duly and legally issued on May 17, 2005. A copy of the '392 patent is attached hereto as Exhibit A.  The '392 patent generally relates to layered body armor having one or more integrated air channels.

9.     Plaintiff LineWeight is the assignee of the '392 patent.  Plaintiff Crye Precision is the exclusive licensee of the '392 patent.

## STATEMENT OF FACTS

10.    Crye Precision is a recognized leader in the design and manufacture of military equipment and apparel. For over ten (10) years, Crye Precision has developed innovative products that improve the way the U.S. military operates.  Crye Precision is a leading designer and provider of garments worn by virtually all U.S. military personnel.

11.    For example, Crye Precision markets several products to the United States military including but not limited to the CAGE Plate Carrier$^{TM}$ and the Cage Armor Chassis$^{TM}$, which are specially designed to be worn by military personnel to keep military personnel comfortable and safe when performing their duties.

12.    Upon information and belief, Defendant manufactures, causes to be manufactured, uses, offers to sell, sells, imports, and/or supplies or causes to be supplied from within the United States products including but not limited to the FAV$^{TM}$ MKII Enhanced Tactical Carrier and the TAC AR$^{TM}$ Plate Carrier.  These products, and any further products of Defendant that infringe the '392 patent, will be referred to herein as "the Products."  An image of

an example of a FAV<sup>TM</sup> MKII Enhanced Tactical Carrier is attached hereto as Exhibit B.  An

image of an example of a TAC AR<sup>TM</sup> Plate Carrier is attached hereto as Exhibit C.

13.    At least as early as December 2013 Defendant was on express notice that the

Products were infringing the '392 patent as a result of Crye Precision's letter to Defendant.

14.    Crye Precision has continued to inform Defendant that its activities infringe the

'392 patent. For example, Crye Precision informed Defendant of this by correspondence on or

about April 18, 2014, May 30, 2014, and August 26, 2014.

15.    Defendant has knowledge of the '392 patent.  Despite its knowledge of the '392

patent, Defendant has continued to use, sell, offer to sell, promote, and/or supply or cause to be

supplied from the United States the Products, while knowing that such activities are infringing

the '392 patent.  Defendant's conduct in infringing the '392 patent is intentional, willful, and

objectively unreasonable.

16.    In addition, upon information and belief, Defendant markets, offers for sale, and

sells within the United States accessory items functionally together with one or more of the

Products.  Examples of these accessory items include but are not limited to: rifle plates, pad

inserts, pouches (e.g., for pistol magazines), and protectors for the collar, throat, groin, and

bicep.  All accessory items offered for sale and/or sold with the Products shall be referred to

herein as "the Accessory Items."

17.    Each of the Accessory Items, when combined with any of the Products,

constitutes a functional unit.

18.    Through Defendant's willful infringement of the '392 patent, Defendant has

obtained revenues, gains, benefits, and advantages through the promotion and sale of the

Products, as well as convoyed sales from the promotion and sale of the Accessory Items.

19.     Defendant's acts as set forth herein have been without license or authority of Plaintiffs.

## DAMAGES

20.     Plaintiffs are being irreparably harmed by Defendant's infringing activities, and have no adequate remedy at law.

21.     Plaintiffs have been extensively damaged by Defendant's patent infringement in an amount to be determined by a jury and this Court.

22.     Plaintiffs seek damages as a result of Defendant's infringement which include, but are not limited to: a reasonable royalty from Defendant's sales, Plaintiffs' lost sales, Plaintiffs' lost profits, and damage to Plaintiffs' reputation and good will arising from Defendant's sales of the Products, from convoyed sales, and from all other products sold by Defendant and activities engaged in by Defendant that directly infringe, constitute contributory infringement of, and or induce infringement of, the '392 patent.

23.     Plaintiffs request that this honorable Court assess enhanced damages against Defendant in the fullest amount permissible by law, in view of the willful, egregious, malicious, and extensive nature of Defendant's bad faith activities complained of herein, and in view of the numerous violations, the willful nature of the violations, and the significant damage to Plaintiffs, as set forth above.

## COUNT I – PATENT INFRINGEMENT

24.     Plaintiffs repeat and reallege the allegations set forth in all of the preceding paragraphs.

25.     This claim arises under 35 U.S.C. §101 *et seq.*

26.     Defendant has engaged in the foregoing conduct with respect to the '392 patent during the term of the '392 patent and without license or authority from Plaintiffs.  Defendant will not cease engaging in the foregoing conduct.

27.     Defendant has infringed and continues to infringe the '392 patent by and through its aforementioned activities related to the Products and the Accessory Items.

28.     Defendant's acts of infringement have been willful and with knowledge of the '392 patent.

29.     Defendant has profited from its infringing activities.

30.     As a result of Defendant's conduct, Plaintiffs have been substantially harmed, have suffered actual damages, have suffered lost profits, and have been forced to retain legal counsel and costs of court to bring this action.

31.     If Defendant's infringing conduct is not enjoined, Plaintiffs will suffer irreparable harm that cannot be compensated by monetary damages.

## JURY TRIAL DEMAND

32.     Pursuant to Rule 38, Fed. R. Civ. P., Plaintiffs hereby demand a trial by jury on all issues set forth herein that are properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in Plaintiffs' favor and against Defendant, and provide Plaintiffs the following relief:

A.     That Defendant be adjudged to have engaged in infringement of the '392 patent in accordance with 35 U.S.C. §101 *et seq*.;

B.     That the '392 patent was duly and legally issued by the U.S. Patent and Trademark Office, and is valid and enforceable;

C.     That each of Defendant, its officers, agents, servants, employees, representatives, distributors and all persons in concert or participation with Defendant be enjoined pursuant to 35 U.S.C. § 283 from engaging in any activities which infringe Plaintiffs' rights in the '392 patent under 35 U.S.C. § 271;

D.     That each of Defendant, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with them be enjoined pursuant to 35 U.S.C. § 283 from making, using, importing, exporting, offering for sale and selling any products and activities which directly infringe, constitute contributory infringement, or induce infringement, of the '392 patent under 35 U.S.C. § 271;

E.     That Defendant be directed to file with this Court and serve on Plaintiffs within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

F.     That Defendant be required to account for and pay over to Plaintiffs any and all revenues and profits derived by it and all damages sustained by Plaintiffs by reason of the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled pursuant to 35 U.S.C. § 284, and all other applicable law;

G.     That Defendant be required to account for and pay over to Plaintiffs such actual damages as Plaintiffs have sustained as a consequence of Defendant's infringement of the '392 patent, and that the damages relating to patent infringement be trebled pursuant to 35 U.S.C. §284, and to account for and pay to

Plaintiffs all of Defendant's gains, revenues, profits and advantages attributable to or derived by Defendant's infringement of the '392 patent;

H.   That each such award of damages be enhanced to the maximum available for each infringement in view of Defendant's willful infringement of Plaintiffs' rights;

I.   That Defendant be required to deliver up for impoundment during the pendency of this action, and for destruction thereafter, all copies of the infringing materials in its possession or under its control and all materials and machinery, including but not limited to molds and master models, used for making same;

J.   That Plaintiffs be awarded punitive and/or exemplary damages because of the egregious, malicious, and tortious conduct of Defendant complained of herein;

K.   That Plaintiffs recover the costs of this action including their expenses and reasonable attorney's fees pursuant to 35 U.S.C. § 285 and all further applicable law, because of the deliberate and willful nature of the infringing activities of Defendant sought to be enjoined hereby, and that this case be deemed an exceptional case warranting such an award;

L.   That Plaintiffs be awarded pre-judgment and post-judgment interest;

M.   That Plaintiffs obtain all further relief permitted under the laws of the United States and the State of New York; and,

N.   That Plaintiffs obtain all such other and further relief as the Court may deem just

and equitable.

Dated: October 14, 2014                    Respectfully submitted,

Lee A. Goldberg (LG-9423)
Dianna G. El Hioum (DG-4294)
Benjamin H. Graf (BG-1409)
MERCHANT & GOULD PC
767 Third Avenue, 23rd Floor
New York, New York 10017
(212) 223-6520 (phone)
(212) 223-6521 (fax)
lgoldberg@merchantgould.com
delhioum@merchantgould.com
bgraf@merchantgould.com

# EXHIBIT A

US006892392B2

(12) **United States Patent**     (10) Patent No.:   **US 6,892,392 B2**

Crye et al.     (45) **Date of Patent:**    **May 17, 2005**

(54) **PERSONAL BODY ARMOR**

(75) Inventors: **Caleb Clark Crye**, Brooklyn, NY (US); **Eric Owen Fehlberg**, Queens, NY (US); **Gregg M. Thompson**, Brooklyn, NY (US)

(73) Assignee: **LineWeight LLC**, Brooklyn, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 270 days.

(21) Appl. No.: **10/255,157**

(22) Filed: **Sep. 25, 2002**

(65) **Prior Publication Data**

US 2005/0010987 A1 Jan. 20, 2005

**Related U.S. Application Data**

(60) Provisional application No. 60/324,889, filed on Sep. 26, 2001.

(51) Int. Cl.⁷ ................................................. F41H 1/02
(52) U.S. Cl. ......................................................... 2/2.5
(58) Field of Search ............................. 2/2.5, 455, 456, 2/459, 461, 462, 463, 464, 465, 467; 428/221, 223, 911; 442/189

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,003,270 A | 9/1911 | Keill | |
| 1,298,618 A | 3/1919 | Wloszek | |
| 3,370,302 A | 2/1968 | Karlyn | |
| 3,784,984 A * | 1/1974 | Aileo | 2/423 |
| 3,873,998 A | 4/1975 | Norris et al. | |
| 4,507,802 A * | 4/1985 | Small | 2/2.5 |
| 4,660,223 A | 4/1987 | Fritch | |
| 4,783,853 A | 11/1988 | Zuber | |
| 5,060,314 A * | 10/1991 | Lewis | 2/2.5 |
| 5,220,691 A | 6/1993 | Wiegers | |

| | | | |
|---|---|---|---|
| 5,423,087 A * | 6/1995 | Krent et al. | 2/463 |
| 5,524,641 A * | 6/1996 | Battaglia | 128/846 |
| 5,534,343 A | 7/1996 | Landi et al. | |
| 5,581,805 A * | 12/1996 | Rennick | 2/455 |
| 5,652,967 A * | 8/1997 | Hsu | 2/463 |
| 5,996,115 A | 12/1999 | Mazelsky | |
| 6,012,162 A | 1/2000 | Bullat | |
| 6,182,299 B1 * | 2/2001 | Chen | 2/463 |
| 6,266,818 B1 | 7/2001 | Howland et al. | |
| 6,418,832 B1 | 7/2002 | Colvin | |

OTHER PUBLICATIONS

"How Body Armor Works—Stopping Bullets" by Tom Harris, web page printout http://www.howstuffworks.com/body-armor1.htm 3 pp. Sep. 23, 2002.

"How Body Armor Works—Let Me Be Blunt" by Tom Harris, web page printout http://www.howstuffworks.com/body-armor2.htm, 3 pp. Sep. 23, 2002.

"How Body Armor Works—Ranking Resistance" Tom Harris, web page printout http://www.howstuffworks.com/body-armor3.htm 4 pp. Sep. 23, 2002.

* cited by examiner

*Primary Examiner*—Gary L. Welch
(74) *Attorney, Agent, or Firm*—Stiennon & Stiennon

(57) **ABSTRACT**

Personal body armor has hard armor plates on the front and back of the wearer which extend between a left vest section and a right vest section formed of soft armor. Foam pads are affixed to the interior of the vest sections which space the soft armor and the hard armor plates from the wearer's body and define multiple vertically extending air channels between the wearer and the hard armor plates and the interior of the soft armor The air channels promote ventilation of the armor and cooling of the wearer. For additional comfort, the soft armor is formed of multiple conventional layers of ballistic material and a ¹⁄₁₆ inch molded plastic layer. The hard armor plates are configured to avoid interference with the usual range of motion of the wearer.

**27 Claims, 3 Drawing Sheets**





**FIG. 1**



**FIG. 2**



FIG. 3

US 6,892,392 B2

**1**

# PERSONAL BODY ARMOR

## CROSS REFERENCES TO RELATED APPLICATIONS

This application claims the benefit of the filing date of U.S. Provisional Application No. 60/324,889, filed Sep. 26, 2001, the disclosure of which is incorporated by reference herein.

## STATEMENT AS TO RIGHTS TO INVENTIONS MADE UNDER FEDERALLY SPONSORED RESEARCH AND DEVELOPMENT

Not applicable.

## BACKGROUND OF THE INVENTION

The present invention relates to personal armor for protection against projectile threats in general, and more particularly to armor intended to counter higher speed projectiles such as rifle rounds.

Persons exposed to projectile threats, such as police officers and soldiers, may seek a certain level of protection by wearing armored clothing. Such body armor is available in a variety of forms to address various levels of potential threats.

Low velocity projectiles such as handgun rounds, fragmentation rounds from a grenade or mortar, and miscellaneous shrapnel may be countered by so-called "soft armor." Soft armor is worn in the form of jackets, vests, etc. which are composed of assemblies of ballistic fabric such as those formed from DuPont Kevlar® fibers. Typically, soft armor will employ 15–30 layers of thin flexible tightly woven ballistic fabric. This material is generally lightweight and effective in stopping handgun rounds. However, the multiple layers required to make the soft armor are also an effective insulator, trapping heat close to the wearer's body.

In a more serious threat situations, where higher velocity rifle rounds must be countered, soil armor has typically been supplemented with hard armor. The hard armor is fabricated of rigid plates of ceramic, polymer, or metal. These plates are usually molded or formed to conform to a standard wearer. To provide the greatest area of coverage, and hence protection, these plates are often large and hence can interfere with the wearer's mobility. A common approach to mounting the plates to the wearer is to secure them within exterior pockets fabricated on a soft armor jacket or vest. This modular approach allows the wearer to assess the level of risk and to add or subtract hard armor as the situation demands. However, the result is a more bulky and potentially hot armor assembly. Because the hard armor plates can compromise mobility, the wearer may choose to sacrifice a greater level of protection for ease of movement. The option to remove some levels of protection, however, means that occasionally the wearer of the armor encounters a higher velocity projectile without the appropriate hard armor protection.

What is needed is a body armor system which is effective against high velocity projectiles yet which does not unduly compromise wearer mobility or temperature regulation.

## SUMMARY OF THE INVENTION

The body armor of this invention has hard armor plates which are not removable in normal use. The hard armor plates on the front and back of the wearer extend between a left vest section and a right vest section formed of soft armor. The vest sections are spaced from one another in the front

**2**

and back of the wearer, leaving no soft armor behind the hard armor plates at the front and back. Foam pads are affixed to the interior of the vest sections to evenly distribute the weight of the armor and to space the soft armor and the hard armor plates from the wearer's body. Thus multiple vertically extending air channels are defined between the wearer and the hard armor plates and the interior of the soft armor. The air channels promote ventilation of the armor and cooling of the wearer. For additional comfort, the soft armor is formed of multiple conventional layers of ballistic material and a ¹⁄₁₆ inch molded plastic layer. In addition, the hard armor plates are configured to avoid interference with the usual range of motion of the standard wearer. Upper and lower armor plates may be independently attached to the front sections of the vest sections, and thereby allowed to slide with respect to one another as the wearer moves.

It is an object of the present invention to provide body armor which guards against high velocity projectiles.

It is another object of the present invention to provide body armor which permits natural convective cooling of the wearer.

It is a further object of the present invention to provide body armor which is more comfortably worn.

Further objects, features and advantages of the invention will be apparent from the following detailed description when taken in conjunction with the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is an exploded isometric view of the body armor of this invention.

FIG. **2** is a perspective view, partially cut away in section, of the body armor of FIG. **1** as worn by a soldier.

FIG. **3** is a cross-sectional view of the body armor of FIG. **2**.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring more particularly to FIGS. **1–3**, wherein like numbers refer to similar parts, the body armor **20** of this invention is shown. The body armor **20** is composed of a soft armor vest **22** which has a right vest section **24** and a left vest section **25**. The vest sections **24, 25** are connected by rigid hard armor plates. The plates include two front plates; an upper breast plate **26** which overlaps a lower abdomen plate **28**; and a back plate **30**. A system **32** of closed cell foam pads is affixed to the inside of each vest section **24, 25**. The system of pads **32** spaces the vest **22** from the wearer **34**, as shown in FIG. **2**, such that a plurality of air channels **36** are defined between die wearer and the soft armor.

The vest sections **24, 25** are fabricated of multiple layers of ballistic fabric material, for example Mont Kevlar® material, Akzo's Twaron® T-2000 microfilament aramid fiber material, or other conventional ballistic fabric. As in a conventional soft armor system, the 15–30 layers **38** of ballistic fabric, as shown in FIG. **2**, serve to slow down and disperse energy of an incoming projectile. Soft armor is usually adequate for dealing with handgun rounds, fragmentation rounds from a grenade or mortar or other low velocity, subsonic projectile threats.

A molded plastic stiffening layer **40** provides some three-dimensional shape to each vest section **24, 25**. The stiffening layer **40** provides a semi-gold sheet that runs the length of the wearer's back as it extends along the back panel and throughout each vest section. The stiffening layer **40** is coextensive with at least 50 percent of the ballistic soft

**3**

armor, and preferably extends along substantially the entire vest section. The vest sections may be assembled by cutting with a die or other means the multiple layers **38** of ballistic fabric, then cutting with a similar die the single stiffening layer **40**. The stiffening layer **40** may be cut from a sheet of 5 nylon, polyethylene, or other thermoplastic material. Once the stiffening layer **40** has been assembled with the ballistic fabric layers **38**, for example being placed between layers of ballistic fabric, hems **42** are applied to finish the edges, and the entire assembly is heat formed to roughly the shape the 10 vest section will take on when worn by a wearer **34**, for example by being formed over a cylindrical mold. The stiffening layer **40** may be only approximately ⅟₁₆ inch thick, and thus, although it imparts some stiffness to the vest section, it is lightweight, and still readily conformable to the 15 shape of the individual wearer **34**. Yet this added stiffness reduces the tendency of the ballistic material to form folds which can reduce wearer comfort and add to the effort of wearing the armor **20**.

As shown in FIG. **1**, each vest section **24**, **25** has a back 20 panel **44** which is positioned rearwardly of the wearer **34** and which is connected by a shoulder section **46** to a breast flap **48**. A torso segment **50** is connected by a side section **52** to the back panel **44**. The torso segment **50** and the breast flap **48** define the front panels of the vest sections. The breast flap 25 **48**, the shoulder section **46**, the back panel **44**, and the torso segment **50** have an outer edge **54** which delineates an armhole **56** through which the wearer's arm extends as shown in FIG. **2**.

The lower portion of the breast flap **48** may be secured or 30 sewn to the upper portion of the torso segment **50**, or, as shown in FIGS. **1** and **2**, they may be pivotably connected at a rotatable joint **58**.

Each of the pads **60**, **62**, **65**, **66**, **68**, **70** of the pad system **32** is formed of an open mesh fabric which encloses a closed 35 cell foam resilient block. The foam block may be, for example, EDA foam, or alternatively, expanded polyethylene foam, which is a breathable viscoelastic foam. The open mesh fabric may be a 3D spacer fabric, or, alternatively, a closed smooth surface nylon or cotton, or a wicking 40 material, such as duPont COOLMAX® material, or a low friction nylon material. A preferred material would be low in friction while permitting high air travel. Alternatively, the foam blocks may be enclosed in leather, or may be exposed 45 without any enclosure.

The pad system **32** for each vest section **24**, **25** is comprised of multiple repositionable pads provided with fastening means for adjustable positioning on the interior surface of the vest sections. Preferably, each pad is provided 50 with one part of a hook and loop fastener system. Other readily positionable fastening system may also be used. The pad system **32** may include a shoulder pad **60** which extends from the back panel **44** over the shoulder section **46** to the breast flap **48**; an upper back pad **62** which extends vertically 55 in the vicinity of the rear margin **64** of the back panel; an upper front pad **65** on the breast flap **48**; a lower front pad **66** on the torso segment **50**; and a lower back side pad **68** and front side pad **70** on the side section **52**.

As shown in FIG. **3**, the pads are about one-half inch to 60 two inches thick, preferably about one inch thick, and serve several purposes. First, the pads position the heat insulative soft armor away from contact with the body of the wearer. Thus spacing creates a plurality of air channels **36** extending generally vertically around the body of the wearer **34**. The 65 multiple air channels **36** extend upwardly from a lowermost extremity of the vest to an uppermost extremity. The foam

**4**

pads cover less than 75 percent of the interior surface of the vest, leaving generous volume for air flow around the wearer. These channels permit the flow of air past the wearer's body and serve to prevent heat buildup, thereby permitting greater activity of the wearer before overheating. Second, the pads cushion the weight of the armor **20** and distributed it across the wearer's body. Third, by spacing the rigid armor plates **26**, **28**, **30** from the wearer's body, any back of the plate deformation of an armor plate as the result of projectile impact is less likely to contact and injure the wearer. Moreover, the force of the impact may be spread over a larger area. Fourth, the closed cell foam of the pads adds flotation to the wearer should it be necessary to enter a body of water. Not only do the pads counter the added weight of the body armor **20**, but the pads will usually represent a net buoyancy, helping to keep the wearer afloat.

It will be noted, as shown in FIGS. **1** and **2**, that the right vest section **24** is connected to the left vest section **25** by the back plate **30**. Thus it will be apparent that it is not an option to wear the armor **20** without the back plate **30**. In a similar fashion, the breast plate **26** and abdomen plate **28** are required to connect the vest sections **24**, **25**, although a single font plate could be substituted for the two plates. Hence, it is the rigid armor plates **26**, **28**, **30** which provide ballistic protection to the front and rear of the wearer. The hard armor plates provide two portions which are positioned so that when the vest is worn a wearer's vital organs are positioned between said at least two portions.

Because use of the armor plates is not optional, the armor **20** may safely dispense with soft armor to the front and rear of the wearer, between the wearer and the armor plates. Although there is some overlap of the hard armor plates with the soft armor for mounting purposes, more than 50 percent of the hard armor is not backed by woven ballistic soft armor. As a result, a wide front air channel **74** is defined between the front margins **75** of the vest sections **24**, **25**, and a wide rear air channel **76** is defined between the rear margins of the vest sections.

As shown in FIG. **1**, the armor plates **26**, **28**, **30** are connected to the vest sections **24**, **25** by a plurality of fasteners **78**. The fasteners **78** may be rivets which extend through drilled holes in the armor plates and through the fabric of the soft armor. Alternatively, as shown in FIG. **2**, the plates, may be riveted to fabric flaps or hinges **80** which are in turn sewn to the vest sections **24**, **25**. The armor plates may be fabricated of conventional armor plate material such as ceramics, titanium, hardened PBO, or any hard armor material.

For most comfortable use of the armor **20**, it should be worn over a wicking undershirt **82**, for example formed of duPont CoolMax® material. Although not shown in the drawings, the vest **22** should be provided with a size arrangement, such as belts, straps, or ties to adjust the armor **20** for a snug and comfortable fit on the wearer. For example a single cord may be laced through an array of grommets or cord holes on opposing hems of the vest sections **24**, **25** at the front and the rear of the vest, in a corset-like arrangement.

It should be noted that there are various alternative approaches to the front hard armor plate mounting of the body armor of this invention. The breast plate and the abdomen plate may be independent of each other and connected only along the sides. Or, the bottom of the breast plate may be pinned to the top of the abdomen plate in a pivoting connection, or, the two plates may be connected along a fabric hinge which allows a wide range of move-

5

ments between the two front plates. Alternatively, only a single front plate may be used.

The hard armor are shaped with particular attention to the common movements of a wearer, and are designed to minimize restrictions of movement. At the full range of motion, a standard wearer's arms and legs won't interfere with the plates. The wearer should never feel them throughout a fall range of motion. The plates tend to be taller, and somewhat thinner than conventional hard armor plates. A single plate can accommodate a variety of wearers.

Depending on the threats expected, alternative body armor systems could be constructed with lower levels of threat resistance. For example, the front and rear armor plates could be fabricated as soft armor segments, which can be riveted or fastened to the vest sections in the same manner as the hard armor, while still preserving the cooling effect of the spacing of the armor from the wearer.

It should be noted that, although the soft armor provides better comfort when formed with the molded plastic layer described above, the soft armor vest could also be fabricated without the stiffening plastic layer.

Alternative fastening means for attaching the hard armor plates to the vest sections would include small plastic tabs with sockets on the plates, which engage in sliding connection with projections from the vest sections, to thereby allow the plates to slide when the armor is tightened up.

It is understood that the invention is not limited to the particular construction and arrangement of parts herein illustrated and described, but embraces all such modified forms thereof as come within the scope of the following claims.

We claim:

1. Body armor comprising:

a vest having a right vest section and a left vest section, the vest being fabricated of soft armor, each vest section having portions defining an arm hole and at least one front panel positioned rearwardly of the arm hole and at least one front panel extending frontwardly of the arm hole;

at least one pad extending inwardly from the back panel of each vest section, and at least one pad extending inwardly from the at least one front panel of each vest section, wherein the pads when engaged against a wearer serve to space the vest soft armor from contact with the wearer to define at least one air channel extending upwardly through the vest; and

at least one rigid front plate connected to the vest, the front plate extending between the at least one front panel of each vest section, and connecting the right vest section to the left vest section such that portions of the of least one front plate do not overlie the soft armor of the left or right vest sections and are spaced from the wearer with a front air channel defined between the at least one front plate and the wearer.

2. The body armor of claim 1 wherein the at least one rigid front plate comprises:

a rigid breast plate mounted between the at least one front panel of the right vest section and the at least one front panel of the left vest section; and

a rigid abdomen plate having upper portions which are positioned rearwardly of the breast plate, the abdomen plate being mounted between the at least one front panel of the right vest section and the at least one front panel of the left vest section, the front air channel being defined rearwardly of the breast plate and abdomen plate.

6

3. The body armor of claim 2 wherein the at least one front panel of the right vest section comprises a right upper breast flap connected to the right vest section back panel by a right shoulder section, and right waist section connected to the right vest section back panel by a right side section, and wherein the at least one front panel of the left vest section comprises a left upper breast flap connected to the left vest section back panel by a left shoulder section, and a left waist section connected to the left vest section back panel by a left side section, and wherein each upper breast flap overlies the waist section of its respective vest section and is connected thereto, and wherein the breast plate is connected between the upper breast flaps, and the abdomen plate is connected between the waist sections.

4. The body armor of claim 1 wherein the vest soft armor comprises:

a plurality of layers formed of ballistic material; and

at least one layer of stiffening material connected with the plurality of layers of ballistic material.

5. The body armor of claim 1 further comprising at least one hard armor back plate which extends between the right vest section and the left vest section.

6. The body armor of claim 5 wherein one of the plurality of pads is mounted to each of the right vest section and the left vest section to space the back plate from the wearer and to define a rear air channel between the back plate and the wearer.

7. The body armor of claim 1 wherein the pads when engaged against a wearer serve to space the vest soft armor from contact with the wearer to define a plurality of air channels between the soft armor and the wearer for ventilation of the wearer.

8. The body armor of claim 1 wherein the rigid front plate comprises hard armor, and wherein more than 50 percent of the hard armor is not backed by soft armor.

9. An armored vest comprising a garment forming a vest constructed of ballistic armor, the vest having an interior surface, to which are mounted a plurality of inwardly extending pads which space the vest interior surface from a wearer, the pads defining at least two upwardly extending air channels, which extend from a lowermost extremity of the vest to an uppermost extremity, said channels extending through the vest, the pads covering less than all of the interior surface of the vest.

10. The armored vest of claim 9 further comprising a layer of semi-rigid plastic which is coextensive with portions of the ballistic soft armor.

11. The armored vest of claim 10 wherein the layer of semi-rigid plastic is coextensive with at least 50 percent of the ballistic soft armor.

12. The armored vest of claim 9 wherein the vest ballistic armor comprises soft armor and hard armor, the hard armor including a front plate which extends frontwardly of one of the two upwardly extending air channels.

13. The body armor of claim 12 wherein the vest ballistic armor further comprises at least one hard armor back plate which extends rearwardly of one of the two upwardly extending air channels.

14. The body armor of claim 13 wherein the vest has a right vest section and a left vest section which are spaced from one another, and wherein one of the plurality of pads is mounted to each of the right vest section and the left vest section to space the back plate from the wearer and to define a rear air channel between the back plate and the wearer.

15. The body armor of claim 9 wherein the vest has a right vest section and a left vest section formed of soft armor, and a front plate formed of hard armor is connected between the right vest section and the left vest section.

7

**16**. The body armor of claim **9** wherein the vest has a molded plastic stiffening layer which provides three-dimensional shape which reduces the tendency of the ballistic armor to form folds.

**17**. An armored vest comprising a garment forming a vest constructed of ballistic armor, the vest having an interior surface to which are mounted a plurality of pads, the pads defining at least two upwardly extending air channels, which extend from a lowermost extremity of the vest to an uppermost extremity, the pads covering less than all of the interior surface of the vest, wherein the vest is constructed of soft ballistic armor and hard armor of metal or ceramic construction, and wherein more than 50 percent of the hard armor is not backed by soft ballistic armor.

**18**. The armor vest of claim **17** wherein the hard armor has at least two portions which are positioned so that when the vest is worn a wearer's vital organs are positioned between said at least two portions.

**19**. The armored vest of claim **18** wherein the at least two upwardly extending air channels extend one along each of the hard armor at least two portions.

**20**. Body armor comprising:

a right vest section fabricated of soft armor and having a right arm hole;

a left vest section fabricated of soft armor and having a left arm hole, wherein each vest section has an interior surface facing a wearer;

a plurality of pads mounted to the interior surface of each vest section and extending inwardly to space the soft armor from engagement with the wearer, the pads covering substantially less than all of the vest section interior surfaces, wherein the pads when engaged against a wearer define at least one air channel; and

at least one hard armor front plate connected between the right vest section and the left vest section, such that portions of the at least one front plate do not overlie the soft armor of the vest sections and said pads space the hard armor front plate from the wearer with a front air channel extending upwardly through the vest defined between the at least one front plate and the wearer.

**21**. The body armor of claim **20** further comprising at least one hard armor back plate which extends between and is connected between the right vest section and the left vest section.

8

**22**. The body armor of claim **21** wherein one of the plurality of pads is mounted to each of the right vest section and the left vest section to space the back plate from the wearer and to define a rear air channel between the back plate and the wearer.

**23**. The body armor of claim **20** wherein the right vest section and the left vest section each has a molded plastic stiffening layer which provides three-dimensional shape which reduces the tendency of the ballistic armor to form folds.

**24**. The body armor of claim **20** wherein more than 50 percent of the hard armor front plate is not backed by soft armor.

**25**. An armored vest comprising a garment forming a vest constructed of ballistic armor, the vest having an interior surface, to which a pad system is mounted, the pad system extending inwardly from the vest interior surface to space the vest interior surface from a wearer, the pad system defining at least two upwardly extending air channels, which extend from a lowermost extremity of the vest to an uppermost extremity, said channels extending upwardly through the vest.

**26**. The armored vest of claim **25** wherein the vest ballistic armor further comprises a hard armor front plate which extends frontwardly of at least one of the upwardly extending air channels.

**27**. An armored vest comprising:

a garment forming a vest, constructed of ballistic armor, the vest having an interior surface, a lowermost extremity and an uppermost extremity; and

means for spacing the interior surface of the vest from a wearer, the means for spacing being connected to the vest and extending towards the wearer and defining at least two upwardly extending air channels, which extend from the lowermost extremity of the vest to the uppermost extremity, said channels extending upwardly through the vest.

\*   \*   \*   \*   \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 6,892,392 B2                                    Page 1 of  1
APPLICATION NO. : 10/255157
DATED                   : May 17, 2005
INVENTOR(S)        : Caleb Clark Crye et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 2, line 64 of the issued patent, "semi-gold" should be --semi-rigid--

Signed and Sealed this

Seventeenth Day of April, 2007

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

# EXHIBIT B

You are here:   Home » Products » Tactical Vests » FAV™ MKII Enhanced

✉ Email Friend

## FAV™ MKII Enhanced

The FAV™ MKII Enhanced tactical carrier provides unparalleled modularity, optimum coverage and enhanced ballistic protection for a variety of tactical operations. It is our most scalable tactical platform that allows you to customize your vest configuration based off of your mission.



Downloadable Resources:
FAV MKII Family Sales Sheet
FAV MKII Features and Benefits Illustration
Tactical Vest Owner's Manual

**GALLERY**



01   02   03   04   05   06

| Features | Options |
|---|---|

- Modular MOLLE pouch attachment system gives you 360° usability
- Rugged 1,000-denier Cordura® exterior carrier for long-lasting wear
- Eight built-in, long-arm magazine pouches
- External front and back dual 8" x 10" or 10" x 12" plate pockets
- Internal 6" x 6" adjustable side plate pockets to accept additional rifle plate protection
- Full front, back and 6" x 10" overlapping sides give you enhanced 360° protection
- Comfortable Diamond Ripstop nylon interior carrier
- Integrated mic tabs keep wires secure and out of the way
- Reinforced, heavy-duty rescue strap
- Front, Back and Bicep hook and loop ID attachment system
- Internal cummerbund for added comfort
- Removable NIJ Type IIIA ballistic panels
- Adjustable and removable shoulder-mounted D-ring gear attachment platforms
- Removable weapon retention pads
- Available Colors: Tactical Green, Ranger Green, Black, Khaki, Navy, Digital Urban, Multi-Cam, Universal Camo, Digital Woodland, ACU, and A-TACS®

# EXHIBIT C

You are here:   Home » Products » Load Carrying Systems » TAC AR™ Plate Carrier

✉ Email Friend

## TAC AR™ Plate Carrier

The TAC AR (Assault Rack) makes it easy to upgrade protection for first responders in an active shooter situation. The TAC AR accepts both multi-size hard armor plates in the front/back plate pockets as well as 6" x 6" mini-side hard armor plates in the outer cummerbund.

This plate rack provides the operator with more built-in options making this sleek carrier a great tool in their arsenal.





GALLERY

01  02  03  **04**

| Features | Options |
|---|---|

- Dual-side closure systems to offer the option of either utilizing the outer cummerbund for pouch attachment and 6" x 6" mini-side plates for added protection or removing the outer cummerbund to utilize the low-profile buckle closure system
- Outer cummerbund features a drawstring girth adjustment system on the back of the carrier
- 360° modular attachment system to accommodate PROTECH Tactical TP pouches
- Internal bottom-loading front and back plate designed specifically to hold multi-size type III or type IV hard armor plates
- Adjustable shoulders straps for greater adjustability with integrated D-rings to provide a platform for accessory attachment
- Hook and loop platforms on the front and back for attachment of identification patches
- Radio wire channel for securing communications systems
- Reinforced officer rescue strap
- Available Colors: Black, Tactical Green, Digital Woodland, Navy, Ranger Green, Khaki, MultiCam®, ACU & A-TACS®